726 So.2d 313 (1998)
TRAVEL OPPORTUNITIES OF FORT LAUDERDALE, INC., Appellant,
v.
WALTER KARL LIST MANAGEMENT, INC., a New York corporation, and National Media Corporation, a Delaware corporation, Appellees.
Nos. 97-2671, 97-3114.
District Court of Appeal of Florida, Fourth District.
December 2, 1998.
Clarification Granted January 6, 1999.
Richard W. Epstein, and Ann M. Burke of Greenspoon, Marder, Hirschfeld, Rafkin, Ross & Berger, P.A., Fort Lauderdale, for Appellant.
Peter R. Siegel, and Maurice M. Garcia of Abrams Anton, P.A., Hollywood, for Appellees.
GROSS, J.
Travel Opportunities of Fort Lauderdale (Travel) is a Florida Corporation that sells vacation packages through direct mail and telemarketing. National Media (National) is a Delaware corporation which sells products through televised infomercials. National also compiles a list of names and addresses of consumers who purchase products through its infomercials. Walter Karl List Management (Karl), a New York corporation with offices in Connecticut, manages the distribution of National's lists.
*314 Travel sued Karl and National in Broward County for breach of contract. Karl and National moved to dismiss the amended complaint for lack of personal jurisdiction under Florida's long arm statute, section 48.193, Florida Statutes (1997), and for the failure to demonstrate that the corporations had sufficient minimum contacts with Florida to satisfy due process requirements. Karl and National submitted two affidavits in support of their motion. Travel responded with two affidavits in opposition to the motion to dismiss. Also, in opposing the motion to dismiss, Travel relied on answers to interrogatories and a response to requests for admissions. Without holding an evidentiary hearing, the trial court granted the motion to dismiss.
We agree with the trial court that Karl is not subject to suit in this state on the ground that it operates or engages in a "business or business venture in this state" within the meaning of section 48.193(1)(a), Florida Statutes (1997). Reading all affidavits together, it is uncontradicted that Travel contacted Karl in Connecticut and that the contract was made there. Karl has no physical presence in Florida; it has no offices, post office box, telephone, employees, bank account, or property of any kind in Florida. It does not solicit business in Florida. It advertises in international magazines reaching Florida. The main jurisdictional facts contained in Travel's affidavit were that Karl sold it 19 lists over a period of two years, "with a value exceeding $198,000." These facts do not show a "general course of business activity in the state for pecuniary benefit." April Indus., Inc. v. Levy, 411 So.2d 303, 305 (Fla. 3d DCA 1982). Unlike the case cited by Travel, Naviera Mayaca Express v. Brauer & Assocs., Inc., 559 So.2d 1230 (Fla. 3d DCA 1990), this was not a case where Karl had a "longstanding business relationship" with Travel over a period of years; nor did Karl send extensive business correspondence and a representative to Florida to procure and service the account.
Similarly, we find no jurisdiction under section 48.193(1)(g), Florida Statutes (1997), which provides that a person submits to the jurisdiction of Florida courts for any cause of action arising from the breach of "a contract in this state by failing to perform acts required by the contract to be performed in this state." As we said in Washington Capital Corp. v. Milandco, Ltd., Inc., 695 So.2d 838, 841 (Fla. 4th DCA 1997), "[i]t is not enough that a foreign defendant merely contract with a Florida resident." Rather, the contract itself must require performance in Florida. The letter contract in this case merely gives Travel the right to buy the customer lists for an indefinite period of time. Under the sparse, three paragraph contract, Karl could have delivered the lists to Travel by placing them in the mail in Connecticut. This kind of contractual right is plainly insufficient to satisfy section 48.193(1)(g).
National presents a different jurisdictional scenario. According to Travel's affidavit and certain discovery responses, National has contracted with 48 Florida cable television channels to run infomercials. In 1996, National had net revenues of $1,749,751.00 arising from the sale of products through Florida broadcast stations. National took phone orders from more than 5,000 persons who provided a Florida delivery address and sold more than 5,000 items with a delivery destination in Florida. National's affidavits do not negate these jurisdictional facts.
National's conduct amounts to "substantial and not isolated activity within this state," within the meaning of section 48.193(2), Florida Statutes (1997), such that National is subject to general jurisdiction in Florida. In construing section 48.193(2), Florida courts "have harmonized this language with the constitutional due process requirements" set forth in Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Nichols v. Paulucci, 652 So.2d 389, 391 (Fla. 5th DCA 1995); see Price v. Point Marine, Inc., 610 So.2d 1339 (Fla. 1st DCA 1992). In Helicopteros, the Supreme Court held that "continuous and systematic general business contacts" were required before a forum could exercise general jurisdiction over a nonresident defendant. Helicopteros, 466 U.S. at 416, 104 S.Ct. 1868.
*315 National's broadcasting of its infomercials on Florida cable channels is substantial, continuous, and systematic. In Pafco General Ins. Co. v. Wah-Wai Furniture Co., 701 So.2d 902 (Fla. 3d DCA 1997), the third district found that section 48.193(2) applied where the defendant, a Hong Kong furniture manufacturer, sold 50,000 office chairs a year for $1,000,000 to a Miami distributor. This level of business continued for several years. Most of the chairs were transported to Miami for resale and distribution to retailers in Florida and throughout the United States. In this case, National's dollar volume of sales is similar to that in Pafco, and its advertising strategy is designed to generate product sales in Florida.
A finding of jurisdiction over National does not offend constitutional due process considerations. Jurisdiction is proper where a defendant has purposefully availed itself of "the privilege of conducting activities within the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). In the electronic age, it is not necessary for a defendant to have a physical presence in a state for jurisdiction to attach. As the Supreme Court wrote in Burger King:
Jurisdiction ... may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.
471 U.S. at 476, 105 S.Ct. 2174.
More recently, the Supreme Court applied a similar due process analysis in a case involving North Dakota's attempt to require an out-of-state mail order company, which had neither outlets nor sales representatives in the state, to collect and pay a use tax on goods purchased for use within the state. See Quill Corp. v. North Dakota, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). The defendant mail order house in Quill sold office equipment and supplies and solicited its business through telephone calls, catalogs, flyers, and advertisements in national periodicals. The defendant mailed 24 tons of catalogs and flyers into North Dakota every year. See id. at 304, 112 S.Ct. 1904. Of $200,000,000 in annual national sales, $1,000,000 were made to about 3,000 customers in North Dakota. See id. at 302, 112 S.Ct. 1904.
Analyzing the state's power to impose a tax under the due process clause, the Supreme Court looked to the development of due process jurisprudence in the area of personal jurisdiction. See id. at 307, 112 S.Ct. 1904. The Court quoted the above cited passage from Burger King to explain the principle that "if a foreign corporation purposefully avails itself of the benefits of an economic market in the forum State, it may subject itself to the State's in personam jurisdiction even if it has no physical presence in the State." Id. Applying this reasoning, the Supreme Court held in Quill that the due process clause does not prohibit the imposition of a tax collection duty on a "mail-order house that is engaged in continuous and widespread solicitation of business within a State." Id. at 308, 112 S.Ct. 1904.[1] The Court recognized that in "`modern commercial life' it matters little that such solicitation is accomplished by a deluge of catalogs rather than a phalanx of drummers: The requirements of due process are met irrespective of a corporation's lack of physical presence in the taxing State." Id.
*316 In this case, Travel has demonstrated that National has purposely availed itself of the benefits of an economic market in Florida. Broadcasting infomercials on Florida television stations tightly focuses a sales pitch to in-state consumers. The number of sales is substantial. The Florida Supreme Court has recognized that advertising, marketing, and distributing a product for use by Florida citizens can supply sufficient minimum contacts with the state to satisfy the due process clause. See Electro Engineering Products Co., Inc. v. Lewis, 352 So.2d 862, 864 (Fla. 1977).
Two federal courts have held that the transmission of a commercial on a television broadcast is the type of purposeful act that can subject the seller of a product to the personal jurisdiction of a state. Atlanta Gas Light Co. v. Semaphore Advertising, Inc., 747 F.Supp. 715, 721-22 (S.D.Ga.1990); Casano v. WDSU-TV, Inc., 313 F.Supp. 1130, 1138 (S.D.Miss.1970). In Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 858 (11th Cir.1990), the eleventh circuit held that a weekly news program directed purposefully to satellite dish dealers, distributors, and private dish owners in Florida was one factor that supported a finding that defendants had constitutional minimum contacts with Florida.
Other courts have found that concerted mailings into the forum state, when combined with other factors, can support the constitutionality of a finding that personal jurisdiction exists over a business without a physical presence in the forum state. See Logan Productions, Inc. v. Optibase, Inc., 103 F.3d 49, 53 (7th Cir.1996); Clark v. City of St. Augustine, 977 F.Supp. 541, 543-44 (D.Mass. 1997); Sollinger v. Nasco Int'l, Inc., 655 F.Supp. 1385 (D.Vt.1987). These cases control the result here.
Based on this record, the trial court had jurisdiction over National under section 48.193(2). Sufficient minimum contacts exist to satisfy the due process clause, so that maintenance of the suit against National "does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).
AFFIRMED IN PART; REVERSED IN PART.
STONE, C.J., concurs.
FARMER, J., dissents in part with opinion.
FARMER, J., dissenting.
I agree that Florida lacks jurisdiction over Walter Karl List Management and join with the majority in that regard. But I cannot agree with the conclusion that National Media Corporation is subject to suit under the Florida long arm statute.
The statutory basis for suing National in Florida is the one dealing with doing business in this state.[2] National is incorporated in Delaware, and its corporate offices are in Pennsylvania. It has no offices, post office box, telephone, bank account, or property of any kind in Florida. For jurisdictional purposes its primary business is the making of video commercials and the use of them on cable television systems around the country to sell products and goods. The mere fact that commercials on Florida television induce Florida customers to buy products from out of state is insufficient in my opinion to constitute doing business here within the meaning of section 48.193(1)(a).
Although plaintiff likens these commercials to having stores in Florida, I see a substantial difference between being deemed present in Florida because of advertising in broadcast media in this state, as here, and being deemed present in Florida by reason of the kinds of acts that traditionally amounted to doing business within the state, i.e., selling products through brokers, jobbers, wholesalers, or distributors in this state.
Plaintiff's argument is tied to what it describes as "modern media marketing." National sells its products through advertising on 48 cable television systems in Florida. In *317 one recent year National is said to have derived nearly $2 million in revenue from Florida sales. From these figures, plaintiff reasons that National must be deemed to be physically present here.
The wonders of modern technology allow all manner of communication within Florida from places very far away. Construing these statutory provisions as plaintiff does threatens to make virtually every television advertiser subject to being sued in this state, regardless of where the advertiser is actually based. Moreover if television advertisers are amenable to suit, so too probably are internet users whose web sites prove attractive to Floridians. Judges have no writ to construe broad generalized statutory provisions affecting personal jurisdiction in such a way as to blur or eliminate statutory distinctions. The amenability to suit does not rest on shifting judicial construction of statutory provisions drafted when such media marvels were only a dream. If Florida is to assert judicial jurisdiction over any person who employs the miracles of modern electronic communication to reach viewers in Florida, I think the authority for the assertion of such jurisdiction must come from the legislature.
In Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Court made clear that nonresidents may not constitutionally be subjected to the jurisdiction of another state unless the defendant by some act purposefully avails himself of the privilege of conducting activities within the forum, thus invoking the benefits of its laws. In World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Court emphasized that the "purposeful availment" requirement ensures that a defendant will not be haled into another jurisdiction's courts as a result of "random, fortuitous, or attenuated" contacts with the forum.
Because I believe that § 48.193(1)(a) does not purport to assert jurisdiction over National, ordinarily I would not reach the due process question arising from such an assertion. The majority having now construed section 48.193(1)(a) to assert Florida jurisdiction over a nonresident in the circumstance of National, I would conclude that such an assertion offends constitutional norms. I do not think that out of state commercials on Florida cable television systems amounts to the purposeful availing of Florida's business opportunities as required in the Supreme Court decisions, any more than advertising on the part of the internet accessible in Florida would be. I would affirm.
NOTES
[1] Although the North Dakota tax framework satisfied due process requirements, the Supreme Court invalidated it under the Commerce Clause. Quill Corp. v. North Dakota, 504 U.S. 298, 309-319, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992).
[2] See § 48.193(1)(a), Fla.Stat. (1997) ("operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state").