789 So.2d 1072 (2001)
Mary DEAN and Robert Dean, Appellants,
v.
Dale K. JOHNS, M.D.; Dale K. Johns, M.D., P.A.; Bruce G. Witkind, M.D.; Bruce G. Witkind, M.D., P.A.; and Shin J. Oh, M.D., Appellees.
No. 1D00-1346.
District Court of Appeal of Florida, First District.
June 18, 2001.
*1074 John Beranek, Ausley & McMullen, Tallahassee; Donald M. Hinkle, Fonvielle, Hinkle & Lewis, Tallahassee, for Appellants.
James E. Tribble, Collins & Truett, Tallahassee; Frank C. Bozeman, Jr., Bozeman & Matthews, Pensacola, for Appellees.
POLSTON, J.
Appellants Mary Dean and her husband, Robert Dean, filed suit against Mary Dean's physicians, alleging medical malpractice because they failed to discover a tumor in her spine and unnecessary surgery was performed. The trial court granted appellee Dr. Oh's motion for summary judgment and entered final judgment in his favor on the basis that (i) the court did not have personal jurisdiction over Dr. Oh under Florida's long-arm statute, (ii) an exercise of jurisdiction by the court over Dr. Oh would be contrary to and violate due process under the Fourteenth Amendment of the United States Constitution, and (iii) the law of Alabama applies to the claims against Dr. Oh since Alabama has the most significant relationships to the case, and the statute of limitations under Alabama law bars this action. We hold that the court had personal jurisdiction over Dr. Oh pursuant to section 48.193, Florida Statutes (1997), there were sufficient minimum contacts by Dr. Oh with Florida to satisfy constitutional due process requirements, and Florida, not Alabama, had the most significant relationships to the case so that Florida law applies rather than Alabama law. Accordingly, we reverse.

I. Background

Mrs. Dean, a Florida resident, experienced neurological and neuromuscular pain in her back and lower extremities and was treated by Dr. Johns, a Florida neurosurgeon, in Ft. Walton Beach, Florida. Because her condition was so difficult to diagnose, Dr. Johns decided to consult with Dr. Oh, who practices a subspecialty of neurology at the University of Alabama medical school in Birmingham, Alabama.
*1075 Dr. Johns referred Mrs. Dean to Dr. Oh and sent Dr. Oh his report. Dr. Oh received the initial inquiries from Dr. Johns, and Dr. Oh's office called Dr. Johns to set up Mrs. Dean's appointment. Dr. Johns had great respect for Dr. Oh and often referred his problem patients to Dr. Oh, who always accepted these referrals of Florida patients. Dr. Oh first saw Mrs. Dean in November, 1996, knowing that she was a Florida resident who had been referred by Dr. Johns.
Dr. Oh did a medical work-up on Mrs. Dean, including certain tests, but chose not to do a thoracic MRI, which would have revealed that she had a tumor in her spine. Dr. Oh diagnosed Mrs. Dean's condition and recommended surgery, as indicated by a report sent to Dr. Johns. Dr. Oh advised Mrs. Dean that she could have the surgery at the University of Alabama, or she could have it performed in Florida by her main treating physician, Dr. Johns. Dr. Oh was a neurologist, not a surgeon, and he would not perform the surgery himself. Mrs. Dean returned to Florida for the surgery, and Dr. Oh called her there to further discuss the surgery with her. Dr. Oh also consulted by phone with Dr. Johns, discussing Dr. Oh's report and the recommended surgery.
The recommended surgery was performed in Ft. Walton Beach, Florida in March, 1997. The appellants allege that this surgery was completely unnecessary and seriously damaged Mrs. Dean's spinal condition and caused neurological damage. After the surgery, Mrs. Dean continued to see Dr. Johns in Ft. Walton Beach and eventually Dr. Johns recommended that Mrs. Dean should return to Dr. Oh for further examination. In December, 1997, Mrs. Dean was examined by an associate of Dr. Oh, with Dr. Oh present, and a report from Dr. Oh and his associate was sent to Dr. Johns.
In 1998, Mrs. Dean was evaluated by another doctor, who ordered a thoracic MRI that revealed the tumor. After the tumor was surgically removed, appellants brought this medical malpractice action.
Dr. Oh practices primarily at the University of Alabama in Birmingham, but he treats a substantial number of patients from Florida who are referred to him by Florida doctors. Dr. Oh is licensed to practice medicine in Florida, Georgia, and Alabama. His first medical license was obtained in 1972 in Florida, and he continues to maintain this license and fulfill Florida's continuing educational and financial requirements. He attends neurological meetings and seminars in Florida, and submits continuing medical education credits in Florida to maintain his licensure.
Although Dr. Oh states that he has never treated a patient in Florida by being physically present in Florida, he treats approximately 100 Florida patients per year and has treated over 3,200 Florida patients since beginning his practice in Birmingham. Over the years, Dr. Oh has sent thousands of reports to hundreds of referring Florida doctors and has made hundreds of telephone calls to Florida regarding Florida patients.
Dr. Oh also owns two pieces of property in Florida, including rental property.

II. Personal Jurisdiction Under Section 48.193

"In determining whether long-arm jurisdiction is appropriate in a given case, two inquiries must be made. First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the statute; and if it does, the next inquiry is whether sufficient `minimum contacts' are demonstrated to satisfy due process requirements." Execu-Tech Business Systems, Inc. v. New Oji Paper Company, Ltd., 752 So.2d 582, 584 (Fla.2000)(quoting *1076 Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla.1989)).
The court has personal jurisdiction over Dr. Oh pursuant to section 48.193, Florida Statutes (1997). There are alternative grounds for jurisdiction under sections 48.193(1)(b) ("Committing a tortious act within this state."), 48.193(1)(f)2 ("Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use"), and 48.193(2) ("A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity"). Either of these three grounds will support personal jurisdiction over Dr. Oh.

A. Tortious Act, § 48.193(1)(b)

Dr. Oh argues that he did not commit a tort within Florida because he was not physically present in Florida during his treatment of Mrs. Dean. However, Florida courts have consistently held that physical presence within Florida is not a requirement for personal jurisdiction. Execu-Tech, 752 So.2d at 586 & n. 11 ("Actual physical presence in Florida is not required in order to establish personal jurisdiction under these circumstances," citing and parenthetically quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("[W]e have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.")).
As stated in International Harvester Co. v. Mann, 460 So.2d 580, 581 (Fla. 1st DCA 1984), "[i]t is well-established that the commission of a tort for purposes of establishing long-arm jurisdiction does not require physical entry into the state, but merely requires that the place of injury be within Florida." See also Silver v. Levinson, 648 So.2d 240, 243 (Fla. 4th DCA 1994)(physical presence is not a prerequisite for personal jurisdiction; a professional who deliberately sent defamatory material into the state was subject to personal jurisdiction); Carida v. Holy Cross Hospital, Inc., 424 So.2d 849 (Fla. 4th DCA 1982)(libelous phone calls into state satisfied personal jurisdiction requirements).
Dr. Oh argues that Thompson v. Doe, 596 So.2d 1178 (Fla. 5th DCA 1992) overrules International Harvester and Carida and renders them not applicable to this case. We disagree. The Doe decision overruled International Harvester and Carida only to the extent they are in conflict with that opinion, which dealt with the corporate shield doctrine. The court in Doe held that a corporate employee could not be subject to personal jurisdiction for individual liability on the basis of that employee's actions for the benefit of the employer, not for his individual benefit. It is undisputed that Dr. Oh is being sued individually and the corporate shield doctrine is not applicable. Accordingly, Doe is not applicable, and International Harvester and Carida remain good law applicable to the circumstances of this case. See Allerton v. Florida Department of Insurance, 635 So.2d 36, 39-40 (Fla. 1st DCA 1994) (personal jurisdiction sustained under section 48.193(1)(b) even though tortious activities, which were aimed at Florida, were conducted out of state; distinguishing Doe and citing International Harvester); Silver, 648 So.2d at 242 ("We do not agree that Carida was overruled by Doe because Doe only addressed the `corporate shield' doctrine").
Federal courts have also held, subsequent to Doe, that physical presence is not required to obtain personal jurisdiction. See Robinson v. Giarmarco & Bill, P.C., *1077 74 F.3d 253, 255-57 (11th Cir.1996)(personal jurisdiction established under § 48.193(1)(b) over nonresident attorneys who negligently drafted and accountant who negligently reviewed a will and trust documents intended to be administered in Florida; attorneys and accountant reside and licensed to practice only in Michigan; documents were delivered by mail in Florida and executed in Florida); Kim v. Keenan, 71 F.Supp.2d 1228, 1233 (M.D.Fla.1999)(Florida resident obtained personal jurisdiction pursuant to § 48.193(1)(b) over Georgia lawyers for malpractice claim, alleging failure to timely pursue action against state of Georgia; "[a]s in Robinson, the injury ultimately occurred in Florida when Plaintiffs suffered damages resulting from the alleged foreign malpractice").
In Walter Lorenz Surgical, Inc. v. Teague, 721 So.2d 358, 360 (Fla. 1st DCA 1998), this Court, sustaining personal jurisdiction under section 48.193(1)(b), described the appropriate inquiry to determine whether the alleged tort occurred within this state:
[T]he trial court should decide first, whether Leibinger [individual defendant] has engaged in acts or omissions that injured Lorenz [plaintiff] in Florida, and second, whether Lorenz stated a cause of action in tort arising in substantial part from such acts or omissions. See, e.g., Allerton v. Department of Ins., 635 So.2d 36 (Fla. 1st DCA 1994)(commission of a tort for purposes of long-arm jurisdiction does not require physical entry into the state, but only that Florida be the place of injury).
Mrs. Dean alleges that Dr. Oh's actions and omissions, constituting medical malpractice, injured Mrs. Dean in Florida. The unnecessary surgery was performed in Ft. Walton Beach, Florida, and her injuries resulting from the missed diagnosis of the existence of the tumor occurred in Florida. Dr. Oh's phone calls and reports directed to Dr. Johns in Florida were for the purpose of treating Mrs. Dean in Florida. Accordingly, the alleged tort by Dr. Oh occurred in Florida rather than Alabama, even though he was not physically present in Florida. As in Allerton, International Harvester, Silver, and Carida, there is personal jurisdiction over Dr. Oh.

B. Reports Used, § 48.193(1)(f)2.

In Thomas Jefferson University v. Romer, 710 So.2d 67 (Fla. 4th DCA 1998), the court held that a Pennsylvania laboratory's negligent performance and reporting of genetic test results subjected it to long-arm jurisdiction under section 48.193(1)(f)2. The court stated:
Our review of the record supports the conclusion that Thomas Jefferson processed or serviced the serum in Pennsylvania but that the resulting written report and analysis were used within Florida in the ordinary course of the University of Miami's practice to evaluate the risk of Tay-Sachs [gene].
Id. Just as in Romer, Dr. Oh reviewed Mrs. Dean's medical history, performed tests in Alabama, and rendered a written report and analysis containing his diagnosis and recommendation that were used in Florida in the ordinary course of Dr. Johns' treatment of Mrs. Dean.
Accordingly, personal jurisdiction over Dr. Oh is also satisfied under section 48.193(1)(f)2.

C. General Jurisdiction, § 48.193(2)

As stated in Woods v. Nova Companies Belize Ltd., 739 So.2d 617, 620 (Fla. 4th DCA 1999), "substantial and not isolated activity" under section 48.193(2) means "continuous and systematic general business contact" with Florida. If this threshold is met, the constitutional due process minimum contacts are also satisfied. Id. "[C]ontacts are commonly assessed over a *1078 period of years prior to the plaintiff's filing of the complaint." Id. at 621, citing Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 409-411, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)("examining contacts over a seven-year-period, up to the time the lawsuit was filed"). The court noted that the collective effect of the defendant's activities established personal jurisdiction. Id. at 621.
We agree with the appellants that Dr. Oh has engaged in substantial and not isolated business activities in Florida. He has treated over 3,200 Florida patients, is licensed to practice medicine in Florida, subjects himself to Florida regulation for the practice of medicine in Florida (including continuing medical education requirements), regularly consults with Florida physicians by telephone, renders reports to Florida physicians for use in treating Florida patients in Florida, and owns rental property in Florida.

III. Constitutional Minimum Contacts

The second step in determining whether long-arm jurisdiction is appropriate is to ask whether sufficient "minimum contacts" are demonstrated to satisfy constitutional due process requirements. Execu-Tech Business, 752 So.2d at 584. Contrary to the trial court's ruling, we hold that Dr. Oh had sufficient minimum contacts to satisfy "`traditional conception[s] of fair play and substantial justice' embodied in the Due Process Clause of the Fourteenth Amendment. International Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 464, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).
The United States Supreme Court, in Burger King, describes the purpose and tests for compliance with the Due Process Clause:
The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign, the Due Process Clause `gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'"
Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum.... And with respect to interstate contractual obligations, we have emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities....
A State generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. Moreover, where individuals "purposefully derive benefit" from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities....
Notwithstanding these considerations, the constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State. "[T]he foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that *1079 he should reasonably anticipate being haled into court there." ... "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or a third person."
471 U.S. at 471-76, 105 S.Ct. 2174 (citations omitted; emphasis added).
The various activities of Dr. Oh, including the relationships he has developed with referring Florida physicians to treat Florida patients and his maintenance of a Florida medical license, easily pass the minimum contacts test of the Due Process Clause.
Physical presence in the state is not a requirement for due process. Modern commercial life involves a substantial amount of business conducted solely by mail and wire communications across state lines, "thus obviating the need for physical presence within a State in which business is conducted." 471 U.S. at 476, 105 S.Ct. 2174. Dr. Oh has purposefully directed his activities at Florida residents, and has not presented any compelling evidence demonstrating that other considerations would render jurisdiction unreasonable. 471 U.S. at 477, 105 S.Ct. 2174.

IV. Florida Law Applies

Section 95.10, Florida Statutes (1997), the borrowing statute, states: "When the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state." To determine where the cause of action arises for purposes of this borrowing statute, Florida uses the "significant relationships test." Bates v. Cook, Inc., 509 So.2d 1112, 1115 (Fla.1987)(as set forth in the Restatement (Second) of Conflict of Laws §§ 6, 145-46).
"The place of injury still determines which state's law applies, unless some other state has a more `significant relationship' to the issue. The significant relationship is assessed by examining the enumerated factual `contacts' in [Restatement] section 145(2), which are to be taken `into account' while applying the general principles of [Restatement] section 6." Mezroub v. Capella, 702 So.2d 562, 565 (Fla. 2d DCA 1997).
Because Mrs. Dean's injuries occurred in Florida, Florida law will apply unless Alabama has a more significant relationship. Mezroub, 702 So.2d at 565; Tune v. Philip Morris Incorporated, 766 So.2d 350, 354-55 (Fla. 2d DCA 2000)(injury occurred in Florida and defendant failed to persuade court that New Jersey had a more significant relationship to the case), review denied, 786 So.2d 1188 (Fla. 2001).
We are not persuaded that Alabama has more significant relationships than Florida. Dr. Oh's diagnosis and recommendation were sent to Florida, in anticipation of Mrs. Dean having surgery there. Significantly, Mrs. Dean's alleged unnecessary surgery and other injuries occurred in Florida. The relationship between the parties is centered in Florida rather than Alabama.
In addition, the policy considerations of the Restatement weigh in favor of Florida. Florida has a significant interest in protecting its patients' rights, especially when being treated by Florida physicians. See Kukral v. Mekras, 679 So.2d 278, 284 (Fla. 1996)(the medical malpractice scheme "must be interpreted liberally so as not to unduly restrict a Florida citizen's constitutionally *1080 guaranteed access to the courts"). Mrs. Dean has a justifiable expectation that Florida will provide her access to its courts under these circumstances.
Accordingly, the cause of action arose in Florida so that section 95.10, Florida Statutes (1997)(the borrowing statute used by the trial court to determine that the Alabama statute of limitations barred this action against Dr. Oh), does not apply to this case. Bates, 509 So.2d at 1115 ("The borrowing statute will only come into play if it is determined that the cause of action arose in another state.").

V. Conclusion

The court had personal jurisdiction over Dr. Oh pursuant to section 48.193, Florida Statutes (1997), there were sufficient minimum contacts by Dr. Oh with Florida to satisfy constitutional due process requirements, and Florida, not Alabama, had the most significant relationships to the case so that Florida law applies rather than Alabama law.
REVERSED and REMANDED.
ALLEN and VAN NORTWICK, JJ., CONCUR.