[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/08/99
THOMAS  K. KAHN
CLERK

No. 98-3765

D. C. Docket No. 95-01732-CIV-T-25E

ASSOCIATED TRANSPORT LINE, INC.,
COMMERCIAL UNION ASSURANCE COMPANY,
PLC, on behalf of certain underwriters Institute of
 London Underwriters,

Plaintiffs-Appellants,

versus

PRODUCTOS FITOSANITARIOS PROFICOL EL
CARMEN, S.A.,

Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of Florida

**(December 8, 1999)**

Before BLACK and WILSON, Circuit Judges, and HILL, Senior Circuit Judge.

HILL, Senior Circuit Judge:

Associated Transport Line, Inc. and Commercial Union Assurance Company appeal the district court's dismissal of their complaint for lack of personal jurisdiction over Productos Fitosanitarios Proficol El Carmen, S.A. For the following reasons, we affirm the dismissal.

I.

Productos Fitosanitarios Proficol El Carmen, S.A. (Proficol), a Colombian herbicide manufacturer, contracted with Associated Transport Line, Inc. (Transport) to ship its herbicide from Colombia to a buyer in Trinidad. The shipping documents were prepared and signed in Colombia and showed that Transport would make stops in Texas and Florida before taking the herbicide to the West Indies. Transport alleges that the documents did not identify the chemical content of the herbicide.

During the trip, the herbicide leaked onto the deck of the ship while it was in Florida waters. The United States Coast Guard required Transport to clean up the spill. Transport's agents in Colombia telephoned Proficol in Bogata, Colombia to get the chemical name of the herbicide so that Transport would know how to collect and dispose of it. Transport alleges that Proficol misidentified the herbicide as a dangerous environmental pollutant, when, in fact, the chemical composition of the herbicide was far less harmful. Relying on this alleged misinformation, Transport engaged in a clean-up process that cost $673,177. Transport alleges that, if the chemical had been

2

correctly identified, the clean up and disposal of the spill would have cost approximately $15,000.

Transport subsequently brought this action against Proficol under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601, and under general maritime law. Transport seeks to recover from Proficol the excess $657,177 it expended to clean up the herbicide due to Proficol's allegedly negligent misidentification of the herbicide.

Transport claims that the district court may exert personal jurisdiction over Proficol under the tort prong of Florida's long-arm statute, Fla. Stat. ch. 48.193(1)(b), and Rule 4(k)(2), Fed. R. Civ. P., the national long-arm statute. Proficol contends that neither statute applies because there was no "tort" in Florida and it has insufficient contacts with either Florida or the United States to justify the exercise of jurisdiction over it by a Florida federal court.

The district court agreed with Proficol that jurisdiction is lacking under any statute and dismissed Transport's complaint. Transport brings this appeal which we review de novo. *See Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998).

II.

In order to assert jurisdiction over Proficol under Section 48.193(1)(b) of Florida's long-arm statute, Transport must show that Proficol committed a tort in

3

Florida. *Int'l Harvester Co. v. Mann*, 460 So. 2d 580 (Fla. 1st DCA 1989). Transport attempts to meet this requirement by arguing that Proficol "caused a clean-up to occur in Florida by not properly identifying the chemical properties of its product as required under federal admiralty law and CERCLA." Proficol's conduct, according to Transport, constituted a CERCLA violation. Transport relies on *Chatham Steel Corp. v. Brown*, 858 F. Supp. 1130 (N.D. Fla. 1994), for its conclusion that a tort based on CERCLA violations is located where the environmental hazard occurs.

In *Chatham Steel*, a South Carolina company sold spent batteries to a company which recycled batteries at a 53-acre site in Florida. *Id.* at 1144. During the recycling, acid from the batteries spilled on the ground and flowed uncontrolled across the site. Additionally, the company dumped the cut battery casings – contaminated with lead – in the northern portion of the site. *Id.* at 1135. Later, several companies charged with cleaning up the contaminated site sought recovery under CERCLA from the various suppliers of the batteries, including the South Carolina company. *Id.* at 1135.

The South Carolina company claimed that it did not know where the batteries were recycled or even that the batteries were cut open to recycle their lead content. *Id.* at 1145. Aside from its dealings with the recycler, the company had no other contacts with the state of Florida. *Id.*

Plaintiffs sought to assert personal jurisdiction over the South Carolina company under Florida's long-arm statute, contending that the company had committed a "tortious act" in Florida thereby triggering jurisdiction under Fla. Stat. ch. 48.193(1)(b). *Id.* The district court agreed, holding that a CERCLA violation is a "tortious act" within the meaning of the Florida long-arm statute. *Id.* at 1146. The court reasoned that, by selling batteries to the recycler, the South Carolina company had "helped create the serious environmental hazard" in violation of federal law, a tort within the meaning of Section 48.193(1)(b). *Id.* at 1146. Therefore, the South Carolina defendant could be haled into a Florida court to answer for the damage.

Transport argues that, because Proficol "caused a clean-up to occur in Florida" it too "violated federal law in Florida and caused damage in Florida as a result of those violations." Consequently, according to Transport, Proficol committed a tort in Florida under the *Chatham Steel* rule, thereby requiring it to answer the allegations against it in a federal court in Florida.

This analysis might be correct if Transport were suing Proficol for negligently causing the spill and the cost of the cleanup, but it is not. Transport does not allege that Proficol was in any way responsible for the spill. What Transport seeks to recover is not the $15,000 that was required to clean up the spill, but the extra $657,177 that it spent because it believed the spill contained a far more hazardous chemical than it

actually did. Therefore, the wrong which Transport alleges Proficol committed was not the spill of a hazardous substance which Transport was required to clean up, but rather the communication of misinformation which caused Transport to pay more for that clean up than it needed to.

Once this is clear, it is apparent that *Chatham Steel* is inapplicable. In that case, the South Carolina company's sale of its batteries to the Florida recycler was an "arrangement" for disposal of a hazardous substance. In disposing of its spent batteries, the South Carolina company was essentially "traffick[ing] in a hazardous substance," as defined by CERCLA, and any improper release of the hazardous substance is a CERCLA violation subjecting the trafficker to strict liability. For such a violation of federal law, the non-resident trafficker may be haled into federal court in the state where the violation occurred.

Similarly, in this case, the CERCLA violation, if any,[1] was the release of a hazardous substance into the Florida environment. The damage done by this violation was the $15,000 required to clean up the spill. But there is no allegation in this complaint that Proficol caused the spill, nor any claim for the $15,000 clean up cost.

What Transport alleges as the negligence and damage is the misidentification of the chemical composition of the herbicide and the *unnecessary excess money* spent to

---

[1]We do not reach the issue of whether Proficol violated CERCLA in any way.

6

clean up the spill. This additional money spent to clean up the spill, however, was not *proximately caused* by the spill itself. The excess money was spent because Transport was under the impression that the spill contained a chemical requiring far more extensive decontamination procedures than were, in fact, actually necessary. It believed this because, according to it, Proficol told it so.

If Proficol is liable to Transport, then, it is because it had a duty to Transport to communicate accurately the chemical composition of the herbicide which it breached. Where was this duty breached? The answer has to be in Colombia where the telephone conversation took place in which a representative from Proficol told a representative from Transport the name of the chemical. Therefore, the *Chatham Steel* analysis[2] does not apply because the wrong alleged – the tort – was not committed in Florida, but in Colombia.[3]

The real issue in this case is not whether Proficol is liable for the underlying CERCLA violation – the spill – but whether it is liable for the excess spent to clean up the spill. This is the basis of Transport's claim and the alleged tort for which it seeks

---

[2]Of course, we would not be bound by the district court's analysis even if we determined it were applicable to our facts. Because it is not, we do not consider whether to adopt it, although we recognize its well-reasoned persuasiveness.

[3]Transport seems to recognize this fact in its Reply Brief which argues that "even though Defendant/Appellee's negligent conduct originated in Columbia (sic), the injury occurred in the U.S. (Florida)."

to recover, and it did not occur in Florida. Although injury in Florida may have resulted from Proficol's alleged negligence, the Florida courts have made very clear that "the occurrence of the injury alone in the forum state does not satisfy the statutory test." *Jack Pickard Dodge, Inc. v. Yarbrough*, 352 So.2d 130, 134 (1st DCA 1977). *See also Oriental Imports and Exports, Inc. v. Maduro & Curiel's Bank. N.V.*, 701 F.2d 889, 893 (11th Cir. 1983).[4]

## II.

Transport also contends that this court has personal jurisdiction over Proficol under Rule 4(k)2, Fed. R. Civ. P. This rule provides:

> If the exercise of jurisdiction is consistent with the Constitution and law of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

This rule permits the exercise of personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole, but is without sufficient contacts to satisfy the long-arm statute of

---

[4]Furthermore, it is not at all clear to us that any injury did occur in Florida. The injury alleged is not the underlying chemical spill which did occur in Florida waters, or the $15,000 which Transport paid for its containment. Rather, the injury is the excess money it spent in reliance on Proficol's alleged misidentification of the chemical involved. Proficol claims that this money was expended from Transport's corporate headquarters and bank accounts in Texas, not Florida. Thus, even if a Florida injury could trigger the Florida long-arm statute, the facts of this case might not be sufficient to establish such an injury.

8

any particular state. *United States S.E.C. v. Carrillo,* 115 F.3d 1540, 1443-44 (11th Cir. 1997). Since Proficol is not subject to Florida's long-arm statute and Transport concedes that Proficol is not subject to the jurisdiction of the courts of any other state, Rule (k)(2) can provide the necessary vehicle for this court's exercise of jurisdiction over it if the requirements of due process are met. *Panama v. BCCI Holdings (Luxembourg) S.A.* 119 F.3d 935, 942 (11th Cir. 1997). In order to be subject to the jurisdiction of this court under Rule 4(k)(2), Proficol's contacts with the nation as a whole must be (1) either related to the plaintiff's cause of action or have given rise to it; (2) involve some act by which the defendant has purposefully availed itself of the privilege of conducting activities within the forum; and (3) must be such that it should reasonably have anticipated being haled into court there. *Id. See also International Shoe Co. v. Washington*, 326 U.S 310, 316 (1945).

Proficol's contacts with the United States, aside from the shipment of the herbicide at issue in this case, occurred from 1993 to 1996.[5] During this time, Proficol exported its products to the United States on nine occasions, and purchased goods from the United States on 193 occasions. The issue is whether these contacts permit the United States to exercise personal jurisdiction over it under Rule 4(k)(2).

---

[5]These are Transport's allegations, which, for the purposes of the motion to dismiss, we assume to be true.

First, it is clear that jurisdiction cannot be predicated solely upon the contact giving rise to Transport's claim – the passing through Florida waters of a shipment of the herbicide to Trinidad, especially when the related tort did not occur in the forum. Proficol's alleged single misidentification of the chemical content of a herbicide which passed through Florida waters en route to Trinidad is insufficient to support jurisdiction under Rule 4(k)(2). *See Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 112-113 (1987) (awareness that product will enter state is not enough to satisfy due process – not the kind of purposeful activity required by Constitution); *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 628 (11th Cir. 1994) (same); *Madara v. Hall*, 916 F.2d 1510, 1518 (11th Cir. 1990) (single interview that had impact in forum not enough); *Charlie Foer Evangelistic Ass'n, Inc. v. Cessna Aircraft Co.,* 911 F.2d 1564, 1565-67 (11th Cir. 1990) (fact that nonresident knew repair work would have impact in forum not sufficient); *Sea Lift Inc. v. Refinadora Costarricense de Petroleo, S.A.,* 792 F.2d 989, 993 (11th Cir. 1986) (mere "foot-fall" in forum not enough for due process).

A party's contacts with the forum that are *unrelated* to the litigation must be pervasive in order to support the exercise of personal jurisdiction under Rule 4(k)(2). *Madara*, 916 F.2d at 1516. Proficol's non-related contacts with this forum – the purchases and sales – do not meet this test. First, a party's purchases in the United

States are never enough to justify jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984). In a case where the defendant purchased approximately 80% of its helicopter fleet, spare parts, and accessories from an American helicopter company, the Supreme Court held that "mere purchases, even if occurring at regular intervals, are not enough to warrant . . . jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Id.* at 411. *See also Rosenberg Bros. & Co. v. Curtis Brown Co.,* 260 U.S. 516, 518 (1923) ("Visits on such business [purchasing activity], even if occurring at regular intervals, would not warrant the inference that the corporation was present within the jurisdiction of the state."); *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1362 n.3 (5th Cir. 1990) (purchases, even if they occur regularly, will not justify general jurisdiction); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330-31 (9th Cir. 1984) (visits to forum to purchase not sufficient).

Neither are Proficol's nine sales to the United States during a four-year period constitutionally sufficient to support general jurisdiction. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772 (1984) (sale of 15, 000 magazines each month not sufficient for general jurisdiction); *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 372-73 (5th Cir. 1987) (purchases of nearly $195 million plus sales of $250 million not sufficient for general jurisdiction); *Nichols v. G.D. Searle Co.,* 991 F.2d 1195, 1198

(4th Cir. 1993) (purchases combined with $13 million in sales not enough); *Dalton*, 897 F.2d at 1362 & n.3 (purchases combined with sales yielding 12.9% of total income not sufficient). General jurisdiction has been found lacking even where a company had employees, agencies and salespeople regularly in the forum; where the company was qualified to do business in the forum; and where it regularly solicited business and derived more than 26% of its income from the forum. *Noonan v. Winston Co.*, 135 F.3d 85, 93-94 (1st Cir. 1998); *Nichols*, 991 F.2d at 1198 ($13 million in sales over five-year period insufficient – even though company employed salespeople in forum). Clearly, Proficol's nine sales over four years is insufficient by these yardsticks.

Due process of law requires that Proficol have sufficient contacts with the United States to justify the exercise of personal jurisdiction over it. Neither its sales nor its purchases are sufficient to subject Proficol to the jurisdiction of this court under Rule 4(k)(2).

## III.

Jurisdiction predicated upon Section 48.193(b)(1) is not warranted in this case because the defendant has not committed a tort within the state of Florida. Jurisdiction under Rule 4(k)(2), Fed. R. Civ. P. is not warranted because the defendant has insufficient contacts with the United States to support such jurisdiction. Accordingly, the judgment of the district court is AFFIRMED.