GROSS, C.J.
 

 We reverse the circuit court’s order denying defendant Columbia University’s motion to dismiss for lack of personal jurisdiction. We hold that there is not personal jurisdiction under either subsections 48.193(l)(c) or (2), Florida Statutes (2007).
 

 Ocean World, S.A., a foreign corporation, operates Ocean World Adventure Park in the Dominican Republic. In 2006, Ocean World contracted with Michael Briggs to purchase 12 dolphins from Taiji, Japan, for delivery in the Dominican Republic. Later, Ocean World entered into a “letter of intent” with the Taiji Whale Museum under which both agreed to “cooperate in a friendly exchange to study and conserve [dolphins].” Nothing in the contracts contemplated payment or performance in Florida. Florida is mentioned nowhere in the contracts.
 

 After the Dominican Republic denied a permit to import the dolphins, Ocean World filed a lawsuit against multiple defendants, alleging intentional interference with a contractual or business relationship. Among these defendants were Diana Reiss and the Trustees of Columbia University.
 

 The second amended complaint alleged that Columbia was “doing business” in Broward County, Florida through its alumni association, interactive internet classrooms, and an interactive website providing online courses that allow students to obtain graduate degrees and professional certificates. Also, the pleading alleged that Columbia “has owned, owns and/or has an interest in property rights” in various parcels of real estate in Palm Beach County. The complaint pointed to lawsuits filed by Columbia in Florida where the Trustees had “availed themselves of the benefits offered by the Florida judicial system.” In Count VIII, Ocean World attempted to pin liability on Columbia by painting Diana Reiss as the university’s “apparent agent” who was “authorized ... to interfere” with Ocean World’s contract and business relationship. Count IX alleged that Columbia had damaged Ocean World by negligently hiring or retaining Reiss, that if Columbia had better investigated Reiss before appointing her to her unpaid research position, then Columbia would have discovered that she was “unsuitable” due to her “activist activities and associations.”
 
 [1]
 

 
 *791
 
 Many exhibits were attached to the second amended complaint. Among these were printouts of the University’s interactive internet website and its alumni association online application. Neither contains the word “Florida”; neither is specifically directed at Florida. The website provides online education through downloadable lectures “anytime, anywhere.” Other exhibits showed Columbia’s various interests in real property in Florida. For example, the university held a mortgage on the Colony Hotel which was satisfied in 1971 and holds a vested remainder interest in another property.
 

 Columbia moved to dismiss the case for lack of personal jurisdiction. The University’s supporting affidavits established the following facts:
 

 1. Columbia does not have an office in Florida, maintains no bank accounts in Florida, and is not registered to conduct business in Florida.
 

 2. Only 10 of Columbia’s 14,000 employees have Florida addresses. Eight of these employees have part-time or zero salary appointments. The remaining two employees are post-doctoral research scientists who temporarily located in Florida while doing work at laboratories with equipment not available at Columbia.
 

 3. The Columbia Alumni Association, part of the university, is an association of all of Columbia’s alumni. Columbia has over 250,000 alumni living in the United States, its territories, and 184 countries. The goal of the Association is “to strengthen the bonds between Columbia University graduates worldwide through events, programs, and online resources.” The Association has 37 associations in the United States, “of which five are in Florida.” Each local association is permitted to have a website hosted on Columbia’s servers. “The websites provide information such as member requirements, leadership contacts, news, and events. The associations do not have a designated alumni office or phone number. Individual associations can only be contacted by emailing or mailing the officers at their respective addresses, or via telephone.”
 

 4. Regarding the Columbia’s interactive website, Columbia offered some online graduate level courses. As of 2007, of 457 students enrolled on the website, only two of the students had Florida addresses. The lectures for students sitting in Florida originate in New York.
 

 5. The majority of the lawsuits Columbia filed in Florida were to enforce foreign judgments. All of the previous lawsuits were unrelated to the subject matter of this case.
 

 6. During the time covered by the second amended complaint, Diana Reiss was the Director of Marine Mammal Research Science Laboratory at marine science laboratory at the New York Aquarium in Brooklyn, New York. She lived in Connecticut and worked in New York. She has never been a Florida resident. She has never maintained a place of business or office in Florida.
 

 The circuit court denied Columbia’s motion to dismiss without explanation.
 

 To evaluate the issue of personal jurisdiction under the long-arm statute, section 48.193, Florida Statutes (2007), Florida courts must engage in the two-part analysis set forth in
 
 Venetian Salami Co. v. Parthenais,
 
 554 So.2d 499, 502 (Fla. 1989).
 

 
 *792
 
 First, there must be sufficient facts to bring the action within the ambit of the long-arm statute; if the statute applies, the next inquiry is whether there are sufficient “minimum contacts” to satisfy due process requirements. “Both parts must be satisfied for a court to exercise personal jurisdiction over a non-resident defendant.”
 
 Am. Fin. Trading Corp. v. Bauer,
 
 828 So.2d 1071, 1074 (Fla. 4th DCA 2002). Because we have concluded that there are insufficient facts to create long-arm jurisdiction, we do not reach the issue of Columbia’s minimum contacts with Florida.
 

 Ocean World asserts two statutory bases for jurisdiction. First, that Columbia “personally or through an agent” committed a “tortious act within this state” under section 48.193(l)(b). Second, that Columbia is subject to general jurisdiction because it is “engaged in substantial and not isolated activity within this state” under section 48.193(2).
 

 For specific jurisdiction over Columbia to exist under section 48.193(l)(b), the University, through an agent, must have committed a tortious act in Florida. There must be a causal connection between the university’s Florida actions and the plaintiffs cause of action.
 
 See Am. Overseas Marine Corp. v. Patterson,
 
 632 So.2d 1124, 1127 (Fla. 1st DCA 1994). Ocean World’s case against Columbia turns on the school’s relationship to Diana Reiss and her conduct. Another panel of this court has held that there is no long-arm jurisdiction over Reiss because the second amended complaint failed to demonstrate that she engaged in any tortious conduct within Florida.
 
 Reiss v. Ocean World, S.A.,
 
 11 So.3d 404 (Fla. 4th DCA 2009). Rather, the tort occurred in the countries where the contracts at issue were to be performed.
 
 Id.
 
 That case also held that Reiss did not have those minimum contacts with Florida necessary to support personal jurisdiction. If there is no jurisdiction over Reiss, the pm-ported tortfeasor, there can be no jurisdiction under section 48.193(l)(b) over Columbia, which supposedly acted through Reiss.
 

 We next consider the issue of general jurisdiction under section 48.193(2). That statute provides that “[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.” An assertion of general jurisdiction under section 48.193(2) requires a “showing of ‘continuous and systematic general business contacts’ ” with this state.
 
 Carib-USA Ship Lines Bahamas Ltd. v. Dorsett,
 
 935 So.2d 1272, 1275 (Fla. 4th DCA 2006) (quoting
 
 Helicópteros Nacio-nales de Colombia, S.A. v. Hall,
 
 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984));
 
 Philip J. Padovano, Florida Civil Practice
 
 § 8.7 (2007 ed.);
 
 Seabra v. Inti Specialty Imports, Inc.,
 
 869 So.2d 732, 734 (Fla. 4th DCA 2004). The continuous and systematic general business contacts sufficient to confer general jurisdiction present a “much higher threshold” than those contacts necessary to support specific jurisdiction, under section 48.193(1).
 
 See Seabra,
 
 869 So.2d at 734. One reason for requiring a more rigorous showing to establish general jurisdiction is because jurisdiction under section 48.193(2) does not require that a lawsuit’s cause of action arise from activity within Florida, or that there be any connection between the claim and the defendant’s Florida activities.
 
 See, e.g., Camp Illahee Investors, Inc. v. Blackman,
 
 870 So.2d 80, 85 (Fla. 2d DCA 2003) (“This section [48.193(2) ] ‘does not require eon-nexity between a defendant’s activities and the cause of action.’ ”) (quoting
 
 Woods v. Nova Cos. Belize Ltd,
 
 739 So.2d 617, 620 (Fla. 4th DCA 1999));
 
 Burger King Corp.
 
 
 *793
 

 v. Rudzewicz,
 
 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (“Jurisdiction in [certain] circumstances may not be avoided merely because the defendant did not physically enter the forum State”).
 

 Florida cases have found “continuous systematic business contacts” to confer general jurisdiction where a nonresident defendant’s activities are extensive and pervasive, in that a significant portion of the defendant’s business operations or revenue derived from established commercial relationships in the state. Such contacts have also been found where the defendant continuously solicits and procures substantial sales in Florida.
 

 For example, in
 
 Woods v. Nova Cos. Belize Ltd.,
 
 739 So.2d 617 (Fla. 4th DCA 1999), this court found “continuous and systematic business activities” where the defendant established ongoing commercial relationships in Florida, 100% of its shipments traveled through Florida, 18% of its worldwide product sales were made to Florida importers, and it utilized storage facilities in Florida. Similarly,
 
 Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino,
 
 447 F.3d 1357, 1362 (11th Cir.2006), held that a foreign resort had continuous systematic contacts with Florida where the resort maintained numerous separate commercial relationships with Florida-based entities such as travel and vacation agencies, lawyers, insurance brokers, advertisers, and a host of construction and home décor companies and a significant portion of its vendors operated in Florida.
 
 [2]
 
 Additionally, the resort’s Florida subsidiary solicited and coordinated reser
 
 *794
 
 vations for over 50% of the resort’s guests.
 
 Id.
 
 at 1361-62.
 

 To establish general jurisdiction under section 48.193(2), Ocean World relies on four types of activities. Even lumped together, these activities do not rise to the level of “continuous and systematic general business contacts” with Florida that would support a finding of general jurisdiction.
 

 First, the second amended complaint refers to Columbia’s five alumni associations active in Florida. The purpose of a university’s alumni association is to foster a community among the school’s graduates to assist in recruitment and provide a source for donations. We agree with other courts which have held that the activities of a school’s alumni association are not the type of systematic, continuous business activity that results in general jurisdiction over the school.
 
 See Ferris v. Rollins Coll. Inc.,
 
 No. 1:08-cv-00039-SPM-AK, 2008 WL 4569872, *3 (N.D.Fla. Oct.9, 2008) (citing
 
 Norris v. Oklahoma City Univ.,
 
 No. C-93-1626-VRW, 1993 WL 313122, *2 (N.D.Cal. Aug.3, 1993)
 
 aff'd,
 
 21 F.3d 1115 (9th Cir.1994));
 
 Gallant v. Trustees of Columbia Univ.,
 
 111 F.Supp.2d 638 (E.D.Pa.2000);
 
 Duchesneau v. Cornell Univ.,
 
 No. 08^1856, 2009 WL 533064 (E.D.Pa. Mar.3, 2009);
 
 Kendall v. Trs. of Amherst Coll.,
 
 No. 06-4983, 2007 WL 172396, *5 (E.D.Pa. Jan.18, 2007);
 
 Fox v. Bd. of Supervisors of La. State Univ. and Agrie. & Mech Coll.,
 
 576 So.2d 978, 985 (La.1991).
 

 
 *795
 
 Second, Ocean World argues that the distance learning program, the Columbia Video Network, is sufficient to confer general jurisdiction over Columbia, because the school is doing business on the internet and soliciting students from Florida. However, Columbia is correct that its internet program does not satisfy the requirements of section 48.193(2) because it does not amount to “substantial and not isolated activity
 
 within this state.”
 
 (Emphasis added). Only two students with Florida addresses were enrolled in online courses offered through the Video Network. “The mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is visible.”
 
 McBee v. Delica Co.,
 
 417 F.Bd 107, 124 (1st Cir. 2005). Columbia’s contacts with Florida through the website were not substantial.
 
 See Revell v. Lidov,
 
 317 F.3d 467, 470-71 (5th Cir.2002);
 
 Trintee Indus., Inc. v. Pedre Promotional Prods., Inc.,
 
 395 F.3d 1275, 1281 (Fed.Cir.2005);
 
 Dynetech Corp. v. Leonard Fitness, Inc.,
 
 523 F.Supp.2d 1344, 1348 (M.D.Fla.2007);
 
 Toys “R” Us, Inc. v. Step Two, S.A.,
 
 318 F.3d 446, 454 (3d Cir.2003).
 

 Third, Ocean World contends that Columbia’s property interests in Florida support a finding of general jurisdiction under section 48.193(2). For the most part, Columbia’s interests in property are contingent remainder interests or, in one case, a mortgage that was satisfied in 1971. As Columbia points out, the giving of a remainder interest is contingent on the election of the donor and does not depend on the acquiescence or even knowledge of the receiving party. Nothing demonstrates such a pervasive, commercial property ownership that would amount to a continuous and systematic business activity in Florida. Section 48.193(l)(c) would support a finding of specific jurisdiction for a cause of action arising from owning, using, or possessing real property in Florida, but there is no contention here that Ocean World’s causes of action arose from such ownership by Columbia.
 
 See Forrest v. Forrest,
 
 839 So.2d 839, 841 (Fla. 4th DCA 2003) (citing
 
 Nichols v. Paulucci,
 
 652 So.2d 389, 393 n. 5 (Fla. 5th DCA 1995)).
 

 Fourth, Ocean World asserts that Columbia submitted itself to Florida jurisdiction by filing lawsuits in Florida, thereby availing itself “of the benefits offered by the Florida judicial system.” However, Columbia’s participation in other lawsuits in Florida concerning subject matters separate and distinct from this lawsuit does not create personal jurisdiction over the university in this case. The general rule is that by bringing an action, a plaintiff “subjects itself to the jurisdiction of the court and to such lawful orders which are thereafter entered with respect to the subject matter of the action.”
 
 Palm Beach Towers, Inc. v. Korn,
 
 400 So.2d 110, 111 (Fla. 4th DCA 1981). “A current defendant’s prior decision to bring a suit in Florida should not act indefinitely as a sword of Damocles hanging perilously over the head of that defendant if [it] later challenges jurisdiction in a separate suit.”
 
 Gibbons v. Brown,
 
 716 So.2d 868, 870 (Fla. 1st DCA 1998). Many of the Columbia’s lawsuits in Florida were actions to enforce foreign judgments. There is no indication that Columbia engaged in a pervasive litigation business that subjected it to jurisdiction under section 48.193(2).
 

 For these reasons, we reverse the circuit court’s order denying the motion to dismiss for lack of personal jurisdiction and remand for the entry of an order granting Columbia’s motion.
 

 POLEN and MAY, JJ., concur.
 

 [1]
 

 . Because we decide this case on the issue of lack of personal jurisdiction over Columbia, we do not address the viability of the causes of action alleged.
 

 [2]
 

 .
 
 Compare Northwestern Aircraft Capital Corp.
 
 v.
 
 Stewart,
 
 842 So.2d 190, 195 (Fla. 5th DCA 2003) (holding that the trial court properly exercised general jurisdiction over corporation that marketed, distributed, repaired and sold parts in Florida and additionally provided continuous charter services in Florida);
 
 Bridgestone/Firestone, Inc. v. Herron,
 
 828 So.2d 414, 416 (Fla. 1st DCA 2002) (finding general jurisdiction where defendant's activities generated millions of dollars in revenue from sales of its product in Florida);
 
 Travel Opportunities of Fort Lauderdale, Inc. v. Walter Karl List Mgmt., Inc.,
 
 726 So.2d 313, 314-15 (Fla. 4th DCA 1998) (holding that defendant's conduct amounted to “substantial and non-isolated activity” within Florida for purposes of general jurisdiction where its advertising strategy was designed to generate product sales in Florida and its dollar volume of sales was substantial);
 
 Pafco General Ins. Co. v. Wah-Wai Furniture Co.,
 
 701 So.2d 902 (Fla. 3d DCA 1997) (finding "continuous systematic business contacts” where the defendant sold 50,000 office chairs for approximately $1,000,000.00 per year over several years to a Miami distributor);
 
 Garris v. Thomasville-Thomas County Humane Soc’y, Inc.,
 
 941 So.2d 540, 549 (Fla. 1st DCA 2006) (holding that general jurisdiction existed where defendant directed significant advertisement towards residents of Florida, "targeting the populous Florida ‘market,’ ” solicited donations from Floridians, and had ongoing relationship with several Florida animal aid organization, including arrangements under which it regularly transferred animals to them for adoption in Florida);
 
 Banco Inversion,
 
 S.A.
 
 v. Celtic Fin. Corp.,
 
 S.A., 907 So.2d 704, 710 (Fla. 4th DCA 2005) (holding defendant had requisite contacts under section 48.193(2), Florida Statutes, where it solicited consulting and other services from a Florida corporation in which a substantial amount of the services sought by defendant were performed in Florida) (citing
 
 Industrial Cas. Ins. Co. v. Consultant Associates, Inc.,
 
 603 So.2d 1355, 1356 (Fla. 3d DCA 1992));
 
 Meier v. Sun Int’l Hotels, Ltd.,
 
 288 F.3d 1264, 1273 (11th Cir.2002) (finding general jurisdiction over defendant, whose Florida subsidiary coordinated over 50% of all its hotel guests);
 
 Morley v. Lady Allison, Inc.,
 
 633 So.2d 1173, 1174 (Fla. 3d DCA 1994) (exercising general jurisdiction where defendant’s activities of operating a yacht "involved Florida almost to the exclusion of any other jurisdiction” since its voyages depart and arrive in Miami; it spent $400,000 in Florida for maintenance and repairs; it purchased $50,000 for fuel through a Miami concern; and $45,000 in Miami for other necessities);
 
 Banco Cont'l, S.A. v. Transcom Bank, Ltd.,
 
 922 So.2d 395 (Fla. 3d DCA 2006) (holding that defendant's bank account and open line of credit in Florida utilized to
 
 *794
 
 transfer money in international commerce was insufficient to confer jurisdiction under section 48.193(2), Florida Statutes, where defendant operated its business in Honduras, had no employees or agents in Florida, and did not advertise or solicit business in Florida);
 
 Dev. Corp. of Palm Beach v. WBC Constr., L.L.C.,
 
 925 So.2d 1156 (Fla. 4th DCA 2006) (holding that defendant's activities were not sufficient to support general jurisdiction where it did not maintain an office, do business itself in the state, nor have an agent in the state);
 
 United Shipping Co. (Nassau) Ltd. v. Witmer,
 
 724 So.2d
 
 111,
 
 723 (Fla. 3d DCA 1999) (holding defendants, who operated a boat tour in the Bahamas for which tickets are sold by Florida-based cruise lines on board their vessels, did not have the level of business in Florida to confer jurisdiction under section 48.193(2));
 
 Hobbs v. Don Mealey Chevrolet, Inc.,
 
 642 So.2d 1149, 1153 (Fla. 5th DCA 1994) (finding trial court erred in exercising general jurisdiction over insurance carrier, where it issued one life insurance policy to state resident, maintained certificate of authority to transact insurance in state and held mortgage on real property within the state).
 

 A defendant's level of business in Florida is insufficient to constitute "continuous and systematic business activities” where only a
 
 de minimis
 
 percentage of the company's total volume of business and its yearly revenue was derived from its business relationships in Florida.
 
 See TRW Vehicle Safety Sys. Inc. v. Santiso,
 
 980 So.2d 1149, 1153 (Fla. 4th DCA 2008) (holding that exercising general jurisdiction over defendant was improper where its actual sales in Florida were "a small percentage of the total sales and therefore these sales were
 
 de minimis
 
 ”);
 
 Snow v. DirecTV, Inc.,
 
 450 F.3d 1314 (11th Cir.2006) (declining to exercise general jurisdiction where defendant derived less than 1% of its revenues from matter connected to Florida and did not solicit Florida clients);
 
 Associated Trans. Line, Inc. v. Productos Pitosanitarios Proficol El Carmen,
 
 S.A., 197 F.3d 1070, 1075 (11th Cir. 1999) (finding that nine sales procured in a four-year period were insufficient to support general jurisdiction);
 
 Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.,
 
 421 F.3d 1162, 1167 (11th Cir.2005) (finding that where defendant had only six Florida clients who accounted for, at most, less than 5% of its gross revenue, such acts did not establish that defendant was engaged in a general course of business);
 
 Milberg Factors, Inc. v. Greenbaum,
 
 585 So.2d 1089, 1091 (Fla. 3d DCA 1991) (finding defendant’s contacts did not support specific or general jurisdiction when defendant’s only business contacts with the forum amounted to less than 2% of defendant’s revenue);
 
 accord Dalton v. R & W Marine, Inc.,
 
 897 F.2d 1359, 1362 & n. 3 (5th Cir. 1990) (holding that it is improper to exercise general jurisdiction when defendant’s purchases combined with its sales in the forum yielded 12.9% of its total income).