IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED


PROAMPAC HOLDINGS, INC.,

     Appellant,

 v.

Case No. 5D21-2019
LT Case No. 2019-CA-000787

RCBA NUTRACEUTICALS, LLC
D/B/A RONNIE COLEMAN SIGNATURE
SERIES, WESTERN PACKAGING,
INC. AND POLYFIRST PACKAGING, INC.,

     Appellees.

_____/

Opinion filed September 2, 2022

Nonfinal Appeal from the Circuit Court
for Seminole County,
Jessica J. Recksiedler, Judge.

Sara A. Brubaker, Megan Costa
DeLeon and Riya Resheidat, of
Akerman LLP, Orlando, for Appellant.

Miguel Aristizabal and William
R. Clayton, of Clayton Trial
Lawyers, Fort Lauderdale, for
Appellee, RCBA Nutraceuticals,
LLC d/b/a Ronnie Coleman
Signature Series.

No appearance for other appellees.

SASSO, J.

ProAmpac Holdings, Inc. ("ProAmpac Holdings") appeals an order denying its motion to dismiss RCBA Nutraceuticals, LLC's ("RCBA") complaint for lack of personal jurisdiction. We agree that the operative complaint lacks sufficient allegations to extend long-arm jurisdiction over ProAmpac Holdings. As a result, we reverse.

FACTS

RCBA is a Florida limited liability company in the nutritional supplement business that sells supplements in plastic zipper bags. RCBA purchased the zipper bags from Western Packaging, Inc. ("Western"), who, RCBA alleges, then outsourced the manufacturing of the bags. It is the identity of the manufacturer that gives rise to the personal jurisdiction dispute as to ProAmpac Holdings.

The record reflects that Western initially contracted with PolyFirst Packaging, Inc. ("PolyFirst") to manufacture the zipper bags. Then, in September 2017, ProAmpac Holdings acquired PolyFirst. A third entity, ProAmpac LLC, appears to be affiliated with ProAmpac Holdings, although ProAmpac Holdings and ProAmpac LLC remain separate and distinct legal entities.

2

On March 12, 2019, RCBA filed suit in Seminole County, Florida, against Western and ProAmpac LLC for damages allegedly caused by defects in the zipper bags. After an amended complaint, still naming only Western and ProAmpac LLC, ProAmpac LLC took several actions including filing a motion to strike/motion to dismiss Western's cross-claim, a motion to compel against RCBA, and a stipulation for substitution of counsel.

Then, on February 19, 2020, counsel for ProAmpac LLC and ProAmpac Holdings emailed RCBA indicating that PolyFirst was the proper party defendant, in place of ProAmpac LLC. Ultimately, the parties stipulated to the substitution of the party defendant from ProAmpac LLC to PolyFirst. During discovery, RCBA served upon non-party ProAmpac Holdings several subpoenas duces tecum. ProAmpac Holdings, as a non-party, objected to and moved to quash the subpoenas.

After further discovery, and on April 5, 2021, RCBA filed its third amended complaint, this time naming Western, PolyFirst, and ProAmpac Holdings as defendants.[1] The third amended complaint identified ProAmpac Holdings as "a Delaware corporation doing business in Florida." RCBA

---

[1] While the record reflects that counsel for ProAmpac Holdings accepted service of the third amended complaint on behalf of ProAmpac Holdings, the parties dispute whether service was accepted via email or at a deposition.

3

alleged Western and Poly entered into an agreement to defraud RCBA and that they "solicited and/or approached [RCBA] and offered to manufacture [the] plastic zipper bags" by offering material and false statements or promises. RCBA further alleged ProAmpac Holdings joined into the agreement when it acquired PolyFirst in September 2017 and, by that time, "Pro assumed and/or affirmatively undertook all of the duties owed to [RCBA] that were previously owed to [RCBA] by Poly from that date on. From that date on, Pro, instead of Poly, also continued to manufacture the Zipper Bags for [RCBA]." It additionally alleged that, beginning in July 2017, the defendants shipped the zipper bags to RCBA's packager, Nutrablend, in New York and to JW Nutritional, LLC, a packager in Texas. Further, "the Purchase Orders from Poly and later Pro showed the vendor was Pro and the bags were 'ship to' 'Ronnie Coleman Signature Series' located in Lake Mary."

On May 5, 2021, ProAmpac Holdings moved to dismiss the third amended complaint, alleging lack of personal jurisdiction and forum non conveniens.[2] ProAmpac Holdings argued, inter alia, RCBA failed to

_____

[2] In between the filing of the third amended complaint, when RCBA first named ProAmpac Holdings as a defendant, and ProAmpac Holding's motion to dismiss, ProAmpac Holdings: 1) appeared at a hearing on RCBA's motion for sanctions, filed against ProAmpac Holdings when it was a non-party, and

4

sufficiently plead personal jurisdiction over ProAmpac Holdings, failed to show a general nexus between ProAmpac Holdings and Florida, failed to show a specific nexus between its claims and Florida, and failed to allege any tortious actions occurred in Florida. ProAmpac Holdings concluded that the third amended complaint should be dismissed due to lack of personal jurisdiction or, alternatively, dismissed for forum non conveniens.

In response, RCBA argued, inter alia, ProAmpac Holdings waived personal jurisdiction because it, via its attorney, was served with process in Florida and actively litigated the lawsuit beginning back in July 2019. It concluded that the court did have personal jurisdiction over ProAmpac Holdings, contending that the motion to dismiss "must be defeated because it is based on declarations that directly contradict sworn deposition testimony and documents produced by Pro."

Ultimately, on July 19, 2021, the court entered an order denying the motion to dismiss, simply finding that RCBA "has sufficiently refuted the allegations in [ProAmpac Holdings'] Motion to Dismiss and Declarations to prove jurisdiction." This appeal followed.

## ANALYSIS

---

2) sent a letter to the trial court seeking a Stipulated Protective Order between ProAmpac Holdings, Western, and PolyFirst.

5

"In *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499 (Fla. 1989), the Florida Supreme Court set forth a two-part test to determine whether a Florida state court has long-arm jurisdiction over a nonresident." *Yarger v. Convergence Aviation Ltd.*, 310 So. 3d 1276, 1279 (Fla. 5th DCA 2021).[3] First, the court must determine whether "the complaint alleges sufficient jurisdictional facts" to bring the action within the ambit of section 48.193, Florida Statutes, Florida's long-arm statute. *Id.* "Second, the court must determine 'whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements.'" *Id.* (quoting *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So. 2d 582, 584 (Fla. 2000)). "Both prongs must be satisfied in order to exercise personal jurisdiction over a non-resident defendant." *Estes v. Rodin*, 259 So. 3d 183, 190 (Fla. 3d DCA 2018). However, if the complaint fails to meet the first part of the test, the inquiry ends. *See Parisi v. Kingston*, 314 So. 3d 656, 664 (Fla. 3d DCA 2021) (noting "*Venetian Salami*'s burden shifting analysis is triggered, and the parties' competing affidavits become relevant, only when the operative pleading adequately alleges a basis for extending long-arm jurisdiction over a non-resident defendant").

---

[3] We review a trial court's decision on a motion to dismiss for lack of personal jurisdiction de novo. *Aegis Def. Servs., LLC v. Gilbert*, 222 So. 3d 656, 659 (Fla. 5th DCA 2017).

As to the first part of the test, a complaint may establish personal jurisdiction through allegations demonstrating either specific long-arm jurisdiction, pursuant to section 48.193(1), or general long-arm jurisdiction, pursuant to section 48.193(2). *Yarger*, 310 So. 3d at 1279. We conclude that the allegations in RCBA's third amended complaint did not establish either specific or general jurisdiction.  We therefore need not reach the second part of the test.

a. Specific Jurisdiction:

Section 48.193(1)(a) outlines the actions that cause a party to submit themselves to the jurisdiction of the courts of this state and provides, in pertinent part:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> 2. Committing a tortious act within this state.
>
> . . . . .
>
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

7

. . . .

b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

We analyze each of the above provisions as applied to the operative complaint as follows.

*As to subsection 48.193(1)(a)1.*, the parties acknowledge there are only two allegations within the third amended complaint to support this provision. First, RCBA alleged ProAmpac Holdings "is a Delaware corporation doing business in Florida." But this allegation, standing alone, is insufficient to plead jurisdiction. *Cf. Fasco Controls Corp. v. Goble*, 688 So. 2d 1029, 1030 (Fla. 5th DCA 1997) ("The supreme court in *Venetian Salami* opined that a plaintiff has the option of pleading the supporting facts or pleading the language of the statute. This does not include summing up the statutory language in a phrase . . . not included in the statute such as 'doing business.'" (internal citations omitted)).

The second allegation in the third amended complaint is that "the Purchase Orders from Poly and later Pro showed the vendor was Pro and the bags were 'ship to' 'Ronnie Coleman Signature Series' located in Lake Mary." But this allegation also does not save RCBA's complaint. A careful

8

reading of the operative complaint demonstrates the allegations were that PolyFirst and ProAmpac Holdings shipped the zipper bags to Nutrablend Foods (in New York) and to JW Nutritional, LLC (in Texas). There is no similar language alleging the bags were actually shipped to Florida—only that a purchase order reflects the "ship to" address was Florida. Further, the purchase orders attached to the third amended complaint do not reference ProAmpac Holdings at all, and the only one to show a "ship to" address in Florida referenced Western, not ProAmpac Holdings. For these reasons, the complaint does not allege ProAmpac Holdings actually shipped the defective bags to Florida.

Without an actual allegation that ProAmpac Holdings shipped the zipper bags to Florida, or that it conducted any other business in Florida, RCBA's mere assertion that ProAmpac Holdings "is a Delaware corporation doing business in Florida" is insufficient to allege personal jurisdiction. As a result, RCBA does not satisfy the first jurisdictional prong, and the inquiry ends.

*As to subsection 48.193(1)(a)2.*, RCBA's allegations similarly fall short of demonstrating that ProAmpac Holdings committed a tortious act within Florida. This is so because a finding under section 48.193(1)(a)2. requires, as the statute expressly states, that the tort be committed in Florida. *See,*

9

*e.g.*, *Robinson Helicopter Co. v. Gangapersaud*, 47 Fla. L. Weekly D1347, D1348–49 (Fla. 2d DCA June 22, 2022). And as to both negligence and civil conspiracy, RCBA has failed to allege that any of the three defendants committed any tortious act in Florida. *Cf. Parisi*, 314 So. 3d at 660 (observing that if any member of the conspiracy "committed tortious acts in Florida in furtherance of that conspiracy, then all of the conspirators are subject to the jurisdiction of Florida through its long-arm statute"). Even so, RCBA attempts to invoke long-arm jurisdiction under this portion of the statute by again relying on the "ship to" designation in a purchase order, while overlooking the allegations demonstrating that the bags were actually shipped to locations other than Florida. And so, because the conduct allegedly giving rise to the tort occurred outside of Florida, RCBA's alleged injury suffered in Florida is insufficient to establish long-arm jurisdiction under this prong. *See, e.g.*, *Thompson v. Doe*, 596 So. 2d 1178, 1180 (Fla. 5th DCA 1992) ("This court has held that the occurrence of injury in Florida standing alone is insufficient to establish jurisdiction under section 48.193(1)(b) and that part of a defendant's tortious conduct must occur in this state.").

*As to subsection 48.193(1)(a)6.*, RCBA's allegations fall short because this part requires an act or omission by the defendant (who is outside of Florida) to cause an injury to persons or property within Florida, with

economic harm as the only alleged injury being insufficient. *See Identigene, Inc. v. Goff*, 774 So. 2d 48, 49 (Fla. 2d DCA 2000) ("[T]here must be allegations of personal bodily-injury or property damage. Mere allegations of economic damage will simply not suffice."). Importantly, to the extent RCBA's complaint alleges property damage, it does not allege the damage was to property within Florida.[4] Instead, the complaint alleges the "Zipper Bags were discovered to be defective at over twelve (12) of Plaintiff's major distributors around the world" and at its Nutrablend plant in New York. No allegations tie anything other than pure economic damage to Florida. Thus, RCBA's alleged injury is insufficient to establish long-arm jurisdiction under this prong.

b. <u>General Jurisdiction:</u>

Next, we consider whether RCBA established general jurisdiction. "To establish general jurisdiction, section 48.193(2) requires a defendant to have engaged in 'substantial and not isolated' activity in this state." *Aegis Def. Servs., LLC*, 222 So. 3d at 659. "Florida courts have defined 'substantial and not isolated' to mean 'continuous and systematic general business contact with Florida.'" *Id.* (quoting *Caiazzo v. Am. Royal Arts Corp.*, 73 So. 3d 245,

_____

[4] *But see Premix-Marbletite Mfg. Corp. v. SKW Chems., Inc.*, 145 F. Supp. 2d 1348, 1359 (S.D. Fla. 2001) ("Florida law does not consider property that the defective product is integrated into to be other property.").

11

250 (Fla. 4th DCA 2011)). "Continuous and systematic contacts occur where a nonresident defendant's activities are 'extensive and pervasive, in that a significant portion of the defendant's business operations or revenue [are] derived from established commercial relationships in the state' or where 'the defendant continuously solicits and procures substantial sales in Florida.'" *Id.* (quoting *Trs. of Columbia Univ. v. Ocean World, S.A.*, 12 So. 3d 788, 793 (Fla. 4th DCA 2009)).

As to this issue, ProAmpac Holdings properly argues that the third amended complaint "contains nothing remotely resembling an allegation that ProAmpac Holdings' contacts with Florida are so substantial and pervasive that it is subject to general personal jurisdiction in Florida." We agree. The complaint contains no allegations that ProAmpac Holdings has a business presence in Florida, no allegations that ProAmpac Holdings shipped the bags to Florida, and no allegations that ProAmpac Holdings interacted with Florida in any material way. Overall, RCBA did not allege general jurisdiction under section 48.193(2). By failing to do so, RCBA consequently failed to establish the first jurisdictional prong.

c. Waiver:

Finally, we reject RCBA's argument that ProAmpac Holdings waived any objections to personal jurisdiction by virtue of its participation in litigation.

12

Primarily, we do so because RCBA conflates objections ProAmpac Holdings lodged when it was a non-party, and specifically upon receipt of the subpoena duces tecum, with actions *a party* to litigation may take which would be inconsistent with maintaining an objection to personal jurisdiction.

Foreign subpoenas are covered by section 92.251, Florida Statutes, while long-arm jurisdiction is specifically enumerated in section 48.193, Florida Statutes. Being distinct procedurally, we reject RCBA's argument that actions taken in response to receipt of a foreign subpoena necessarily constitute waiver of personal jurisdiction for a later-filed suit. *See CMI, Inc. v. Ulloa*, 73 So. 3d 787, 790 (Fla. 5th DCA 2011) ("The long-arm statute does not extend the subpoena power of a Florida court to command the in-state attendance of a non-resident, non-party person or entity, or compel that person or entity to produce documents."); *Trs. of Columbia Univ.*, 12 So. 3d at 795 ("The general rule is that by bringing an action, a plaintiff 'subjects itself to the jurisdiction of the court and to such lawful orders which are thereafter entered with respect to the subject matter of the action.'" (quoting *Palm Beach Towers, Inc. v. Korn*, 400 So. 2d 110, 111 (Fla. 4th DCA 1981))).

<u>CONCLUSION</u>

For the reasons stated above, RCBA failed to sufficiently allege facts showing personal jurisdiction under section 48.193(1)(a)1., 48.193(1)(a)2.,

13

48.193(1)(a)6., and 48.193(2). As a result, RCBA failed to meet the first prong of the *Venetian Salami* test, and we therefore do not consider whether ProAmpac Holdings had requisite minimum contacts under the second prong. *See Yarger*, 310 So. 3d at 1281–82 ("Because Convergence failed to allege sufficient jurisdictional facts to bring the cause of action within the ambit of Florida's long-arm statute, we need not address whether Yarger had sufficient minimum contacts with Florida to satisfy federal due process requirements."). We therefore reverse the order denying ProAmpac Holdings' motion to dismiss and remand for additional proceedings consistent with this opinion.

REVERSE and REMAND for further proceedings.

EVANDER and EISNAUGLE, JJ., concur.